[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16923
_____

D.C. Docket No. 6:14-cv-02108-GKS-GJK

DARRELL PATTERSON,

                                                                                              Plaintiff-Appellant,

versus

WALGREEN CO.,

                                                                                              Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(March 9, 2018)

Before ED CARNES, Chief Judge, NEWSOM, and SILER,[*] Circuit Judges.

PER CURIAM:

---

     [*] Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

Darrell Patterson brought Title VII claims for religious discrimination, failure to accommodate religious practices, and retaliation against his former employer, Walgreen Company (Walgreens). He appeals the district court's order granting summary judgment to Walgreens and denying summary judgment to him.

## I.  BACKGROUND

### A.  Facts

Patterson began working for Walgreens in October 2005 as a customer care representative in Walgreens' Orlando Customer Care Center, a call center that operates seven days a week. As a Seventh Day Adventist, Patterson's religious beliefs prohibit him from working during his Sabbath, which occurs from sundown on Friday to sundown on Saturday. At the time he was hired Patterson communicated to Walgreens that he would not be available to work during his Sabbath, and Walgreens initially accommodated that request.

Patterson was promoted a number of times and ultimately became a training instructor. To work around Patterson's Sabbath observance, his supervisor agreed to schedule regular training classes between Sunday and Thursday. But on occasion, business needs required emergency trainings, which were scheduled on a case by case basis and sometimes included Friday nights or Saturdays. In an effort to further accommodate him, Patterson's supervisor allowed him to swap shifts with other employees when he was assigned a training class during the Sabbath, an

option Patterson used on several occasions. There were times, however, where Patterson's scheduling requests could not be accommodated due to business demands — especially when those demands required Patterson to attend (rather than teach) a training session. In 2008, for example, Walgreens' business needs required that Patterson attend a multi-week mandatory training that included Friday evening sessions. Patterson refused to do so and his absence during that period resulted in progressive discipline for each occurrence.

Then on August 19, 2011, Patterson was informed that he would need to conduct an emergency training session the next day, a Saturday. The urgent need for a session arose because the Alabama Board of Pharmacy had ordered Walgreens to shut down its call center activities at the Muscle Shoals Customer Care Center, and it gave Walgreens only two days to do so. As a result, Walgreens had only a few days to train its Orlando Customer Care Center employees to handle the approximately 50,000 phone calls per month that no longer could be handled in Alabama. Patterson's supervisor told him he would have to come up with a solution, which he took to mean he would need to find someone to cover the emergency training session for him if he wanted to avoid working on Saturday. She also told him it would not be fair to ask the Orlando Customer Care Center's only other training instructor, Lindsey Alsbaugh, to cover for him.

Nonetheless, Patterson called and asked Alsbaugh, but she could not conduct the Saturday training session because she had to care for her children. Although Patterson agrees that several other non-trainer employees at the Orlando facility could have conducted the training session, he did not attempt to contact any of them.[1] Instead, Patterson left two phone messages for his supervisor advising her that he could not conduct the Saturday training session because he would be observing his Sabbath. Patterson did not report to work on Saturday to conduct the emergency training session. As a result, the training was delayed.

The following Tuesday Patterson met with his supervisor and a human resources representative to discuss his absence on Saturday. Patterson reaffirmed that he would not work on his Sabbath. The human resources representative suggested that Patterson consider returning to his prior position as a customer care representative or look for another job at Walgreens that had a large employee pool from which Patterson could more easily find employees to switch shifts with him when needed. Patterson asked if he would be guaranteed that he would not have to work on Friday nights or Saturdays, and he was told there could be no guarantee.

---

[1] At oral argument, Patterson's counsel asserted for the first time that Patterson's supervisor told him that he could swap only with Alsbaugh because she was the only employee at the Orlando center on the same level as Patterson. The record does not support that assertion. Patterson did testify at his deposition that in the past, his supervisor had allowed him to swap only with employees at his "same job level." But he testified that there were other employees besides Alsbaugh "who had that same level of expertise" who he had swapped shifts with in the past. And he testified that some of those employees could have covered the training session, but he contacted only Alsbaugh and his supervisor.

Because Patterson was one of only two trainers at the Orlando facility, and the other trainer would soon be leaving the company, Walgreens concluded that it could not accommodate Patterson's request that he never be scheduled to work on a Friday night or Saturday.

Because of his refusal to ever work on his Sabbath and his refusal to look for another position at Walgreens that would make it more likely that his unavailability could be accommodated, he was suspended and then terminated a couple of days later. Walgreens decided to take that action because it could not rely on Patterson if an urgent business need arose that required emergency training on a Friday night or a Saturday.

## B.  Procedural History

After Patterson filed suit, both parties moved for summary judgment. In ruling on the cross-motions for summary judgment, the district court determined that although Patterson's complaint contained counts alleging failure to accommodate, religious discrimination, and retaliation, all three counts in fact "center[ed] on Walgreens' alleged failure to accommodate Patterson's religious beliefs by scheduling Patterson to work the Saturday [s]ession and subsequently terminating Patterson's employment after he failed to report to work for the Saturday [s]ession." The district court focused its analysis on whether a genuine

issue of material fact existed as to Walgreens' failure to accommodate Patterson's Sabbath observance.

The court concluded that: (1) Walgreens had reasonably accommodated Patterson's religious beliefs by permitting him to swap shifts with other employees when his scheduled shifts conflicted with the Sabbath and by offering him the possibility of transferring to other positions within Walgreens that would make it easier for him to swap shifts when needed; and (2) Walgreens would suffer an undue hardship if required to guarantee that Patterson never worked during Sabbath hours given Walgreens' shifting and urgent business needs. It granted Walgreens' motion for summary judgment and denied Patterson's.

## II. DISCUSSION

### A. Religious Accommodation Claim

The district court did not err in granting summary judgment to Walgreens and denying it to Patterson on his Title VII religious accommodation claim. Title VII prohibits an employer from discharging an employee on the basis of the employee's religion. 42 U.S.C. § 2000e-2(a)(1). The word "religion" in the statute includes "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to [sic] an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." Id. § 2000e(j). Therefore, "[a]n

employer has a 'statutory obligation to make reasonable accommodation for the religious observances of its employees, short of incurring an undue hardship.'" Walden v. Ctrs. for Disease Control & Prevention, 669 F.3d 1277, 1293 (11th Cir. 2012) (quoting Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 75, 97 S. Ct. 2264, 2272 (1977)).

"In religious accommodation cases, we apply a burden-shifting framework akin to that articulated in McDonnell Douglas Corp. v. Green." Id. (citation omitted). The plaintiff must first establish a prima facie case of discrimination based on failure to accommodate religious beliefs by showing that: (1) he had a bona fide religious belief that conflicted with an employment requirement; (2) he informed his employer of that belief; and (3) he was discharged for failing to comply with the conflicting employment requirement. Id. If the plaintiff establishes a prima facie case, the burden shifts to the employer to demonstrate that it either offered the employee a reasonable accommodation or could not do so without undue hardship. See id.; 42 U.S.C. § 2000e(j).

No one disputes that Patterson established a prima facie case. The question is whether Walgreens has demonstrated that the evidence construed in the light most favorable to Patterson shows there is no genuine issue of material fact and it is entitled to judgment as a matter of law because it offered Patterson a reasonable accommodation or could not accommodate him without undue hardship.

According to the Supreme Court, "a reasonable accommodation is one that 'eliminates the conflict between employment requirements and religious practices.'" Walden, 669 F.3d at 1293 (quoting Ansonia Bd. of Educ. v. Philbrook, 479 U.S. 60, 70, 107 S. Ct. 367, 373 (1986)).  The employer, however, is not required to accommodate "at all costs." Philbrook, 479 U.S. at 70, 107 S. Ct. at 373.  The Supreme Court has said that an "undue hardship" occurs when an employer must bear more than a "de minimis cost" in accommodating the employee's religious beliefs, and involves "not only monetary concerns, but also the employer's burden in conducting its business." Beadle v. City of Tampa, 42 F.3d 633, 636 (11th Cir. 1995) (quoting in part Hardison, 432 U.S. at 84 n.15, 97 S. Ct. at 2277 n.15).

To comply with Title VII, an employer is not required to offer a choice of several accommodations or to prove that the employee's proposed accommodation would pose an undue hardship; instead, the employer must show only "that the employee was offered a reasonable accommodation, 'regardless of whether that accommodation is one which the employee suggested.'" Walden, 669 F.3d at 1293–94 (quoting Beadle v. Hillsborough Cty. Sheriff's Dep't, 29 F.3d 589, 592 (11th Cir. 1994)).  In other words, "any reasonable accommodation by the employer is sufficient to meet its accommodation obligation." Id. at 1294 (quoting Philbrook, 479 U.S. at 68, 107 S. Ct. at 372) (alteration omitted).  An employer

may be able to satisfy its obligations involving an employee's Sabbath observance by allowing the employee to swap shifts with other employees, or by encouraging the employee to obtain other employment within the company that will make it easier for the employee to swap shifts and offering to help him find another position.  See id.; Morrissette-Brown v. Mobile Infirmary Med. Ctr., 506 F.3d 1317, 1322–24 (11th Cir. 2007).  The other side of the equation is that the employee has a "duty to make a good faith attempt to accommodate [his] religious needs through means offered by the employer." Walden, 669 F.3d at 1294 (concluding that the district court properly granted summary judgment to the employer where the employee did not accept the employer's offer of help in applying for other positions within the company).

The undisputed facts show that Walgreens offered Patterson reasonable accommodations that he either failed to take advantage of or refused to consider, and that the accommodation he insisted on would have posed an undue hardship to Walgreens.  Walgreens shifted the regular training schedule to Sunday through Thursday for Patterson.  That minimized conflicts.  For unusual training sessions that were conducted on his Sabbath, Walgreens allowed Patterson to find other employees to cover his shifts, and he did so on several occasions.  Patterson conceded that his supervisor had never refused one of his requests to swap a Sabbath shift with a willing employee.

Regarding the Saturday, August 20, 2011 emergency training session that Patterson was assigned to conduct, besides his supervisor, he called only one employee, Alsbaugh, who advised him that she could not cover for him because of her childcare obligations. Although Patterson thought that several other employees could have covered the training session for him, he did not attempt to contact any of them.

Walgreens met its obligations under Title VII by allowing Patterson to arrange a schedule swap with other employees when they were willing to do so. See Morrissette-Brown, 506 F.3d at 1322–24 (holding that an employer that allowed an employee to swap shifts and posted a shift schedule the employee could use to find others willing to swap shifts was a reasonable accommodation and that the employer was not required to actively assist the employee in arranging a shift swap). Walgreens was not required to ensure that Patterson was able to swap his shift, nor was it required to order another employee to work in his place. See Hardison, 432 U.S. at 80–81, 97 S. Ct. at 2275 (explaining that an employer is not required to accommodate an employee's religious observance at the expense of other employees who have other strong, but nonreligious, reasons for not working that shift).

Not only that, but after Patterson missed the training session that gave rise to this case, Walgreens' human resources manager encouraged him to seek a different

position within the company, including his former position as a customer care representative, where a larger pool of employees would make it easier for him to swap shifts in the future. Patterson did not want to pursue that option. But he had a duty to make a good faith attempt to accommodate his religious needs through the means offered by Walgreens. See Walden, 669 F.3d at 1294.

Patterson argues that returning to the customer care representative position would have been a demotion that lowered his pay. But he has not presented any evidence to support that assertion. Because he was not amenable to changing positions, there were no discussions about what his pay might have been had he transferred to a customer care representative position. There is no evidence he asked about that.[2]

Patterson also points out that Walgreens could not assure him that his schedule as a customer care representative would never conflict with his Sabbath. Guarantees are not required. And the record does show that even if moving to the customer care representative position did not completely eliminate the conflict, it would have enhanced the likelihood of avoiding it because there were so many

---

[2] Patterson's summary judgment brief stated that he began working as a customer care representative at $9.75 an hour in 2005, but his record citation (to his employment application attached as an exhibit to his deposition) does not support his statement about his pay at that time. Patterson has not pointed to any other evidence in the record of a customer service representative's rate of pay in either 2005, when Patterson was hired, or in 2011, when Walgreens offered to transfer him into the position. Nor has he shown that Walgreens would have insisted that he accept less pay than he was receiving in the position he held before any transfer.

more employees with whom he could swap shifts, as he had done during his almost six years with the company.

Patterson argues that Walgreens could have scheduled training sessions on other days or required other employees to conduct training sessions during his Sabbath. But Walgreens was not required to give Patterson a choice of accommodations or his preferred accommodation. See id. at 1293–94. Under those circumstances, the district court did not err in granting summary judgment to Walgreens because it afforded Patterson reasonable accommodations, which he failed to take advantage of. See Morrissette-Brown, 506 F.3d at 1322 (explaining that the "inquiry ends when an employer shows that a reasonable accommodation was afforded the employee, regardless of whether that accommodation is one the employee suggested") (quotation marks omitted).

Because Walgreens reasonably accommodated Patterson's religious practice, we need not consider the issue of undue hardship. Philbrook, 479 U.S. at 68–69, 107 S. Ct. at 372 ("[W]here the employer has already reasonably accommodated the employee's religious needs, the statutory inquiry is at an end. The employer need not further show that each of the employee's alternative accommodations would result in undue hardship. . . . [T]he extent of undue hardship on the employer's business is at issue only where the employer claims that it is unable to offer any reasonable accommodation without such hardship."); see also Walden,

669 F.3d at 1294 (same); Morrissette-Brown, 506 F.3d at 1324 n.7 (same); Beadle, 29 F.3d at 592 (same). But even assuming the accommodations offered by Walgreens were not reasonable, allowing him to retain his training instructor position with a guarantee that he would never have to work on Friday nights or Saturdays, which is what he insisted on, would have posed an undue hardship for Walgreens' business operations.[3]

Although Walgreens had previously changed the general training schedule to Sunday through Thursday in order to accommodate Patterson, it did not alter the scheduling of emergency training sessions. Walgreens' Orlando Customer Care Center operates seven days a week and sometimes needs emergency training for its employees based on business needs. The circumstances leading to the Saturday, August 21, 2011 training sessions were a true emergency. Because of the Alabama Board of Pharmacy's actions and the two days it gave Walgreens to effectively shut down its Customer Care Center operations in Alabama, the company was forced to redirect approximately 50,000 phone calls per month from the Alabama center to Orlando. The employees in Orlando had to be trained immediately so

---

[3] There is no merit to Patterson's claim that the district court conflated the reasonable accommodation standard and the undue hardship standard. The district court's summary judgment order concluded that Walgreens' efforts to accommodate Patterson's Sabbath observance satisfied its duty to make reasonable accommodations and, alternatively, that delaying emergency training or scheduling other employees to cover all of Patterson's shifts during the Sabbath would require Walgreens to bear a greater than de minimis cost and thus would be an undue hardship.

they could begin handling all of those calls. Patterson's adamant refusal to work on Saturday delayed the required training.

The discussions that Patterson's supervisor and a human resources representative had with him the week after he refused to work as scheduled showed that what Patterson insisted on would produce undue hardship for Walgreens in the future. To ensure that Patterson received the time off for Sabbath observance that he was insisting on, Walgreens would have had to schedule all training shifts, including emergency ones, based solely on Patterson's religious needs, at the expense of other employees who had nonreligious reasons for not working on weekends. See Hardison, 432 U.S. at 80–81, 97 S. Ct. at 2275. In the immediate future, the burden to work all Friday night and Saturday shifts would have fallen on Alsbaugh, Walgreens' only other training instructor at the time. And it is undisputed that she was in the process of leaving the Orlando facility, which would have left Patterson as the only training instructor there. Walgreens then would have been required either to eliminate Friday night and Saturday training sessions altogether, regardless of its business needs, or to schedule less-effective non-trainers to train the untrained some of the time.

Walgreens, like the employer in Hardison, was required to hold trainings on Saturdays at least occasionally because the Orlando facility operated every day and because business necessity — the sudden closing of the Muscle Shoals facility

being a prototypical example — sometimes required urgent training.  See Hardison, 432 U.S. at 80, 97 S. Ct. at 2275.  Under those circumstances, the accommodation Patterson sought would have imposed an undue hardship on Walgreens just as it would have for the employer in Hardison.  See id. at 84–85, 97 S. Ct. at 2276–77.

B.  Religious Discrimination and Retaliation Claims

The district court reasoned that Patterson's religious discrimination and retaliation claims were based on his accommodation claim and decided that they fell with it.  Patterson contends that district court erred by not independently analyzing his discrimination and retaliation claims.  We disagree.

Patterson's three causes of action were each based solely on Walgreens' alleged failure to accommodate his Sabbath observance.  Specifically, Patterson's complaint relied on the same facts outlining the events leading up to his termination to allege:  in Count One, titled "Title VII – Religious Discrimination," that Walgreens intentionally discriminated against him on the basis of religion because it forced him to choose between work and observing his Sabbath; in Count Two, titled "Title VII – Failure to Accommodate," that Walgreens failed to reasonably accommodate his religious belief prohibiting work on his Sabbath; and in Count Three, titled "Title VII – Retaliation," that Walgreens retaliated against him for requesting continued accommodation by giving him "the ultimatum" of

violating his religious belief, resigning, or being terminated. He claimed that all three claims arose under 42 U.S.C. § 2000e(j), which defines "religion" to include the "reasonable accommodation" and "undue hardship" standards.

The district court correctly identified the scope of Patterson's Title VII claims when it determined that all three of them turned on Walgreens' alleged failure to accommodate Patterson's religious need to observe his Sabbath. The evidence, viewed in the light most favorable to Patterson, shows that in the past Walgreens had allowed Patterson to swap shifts with other employees, changed its training schedule, and offered him different employment opportunities to help him avoid potential conflicts with his religious practice. In this instance Patterson could have swapped shifts with some of the other employees who were capable of conducting the training session. And Walgreens decided to terminate his employment only after he failed to conduct the emergency training session, insisted that Walgreens guarantee that he would never have to work on his Sabbath, and refused to consider other employment options within the company without such a guarantee. Those facts are enough to foreclose any genuine issue of material fact as to his accommodation claim, his discrimination claim, and his retaliation claim. Because Patterson's discrimination and retaliation claims were bound up with his accommodation claim, the district court did not err in granting summary judgment to Walgreens on them.

In any event, we review de novo a district court's judgment, Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 767 (11th Cir. 2005), and we can affirm on any basis supported by the record, Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007). It is clear from the record that there is no evidentiary basis for Patterson's discrimination and retaliation claims. As for his discrimination claim, Patterson points to evidence that his supervisor told him it would not be "fair" for him to ask Alsbaugh, who had to take care of her children that Saturday and was scheduled to conduct the Sunday training session, to swap with him, and that his supervisor had encouraged him to work on his Sabbath. That along with the other evidence in the record is not enough for a jury to find that religious bias motivated Walgreens' decision to fire him. See EEOC v. Abercrombie & Fitch Stores, Inc., 575 U.S. __, 135 S. Ct. 2028, 2032 (2015). As a result, Patterson's evidence, without more, is not enough to create a genuine issue of material fact that his religion was a motivating factor in Walgreens' decision to fire him.[4] See id.

---

[4] There is some confusion as to whether the but-for causation standard or the motivating factor causation standard applies to Patterson's discrimination claim. Compare Abercrombie, 135 S. Ct. at 2032 ("Title VII relaxes [the but-for causation] standard, however, to prohibit even making a protected characteristic a 'motivating factor' in an employment decision.") (quoting 42 U.S.C. § 2000e–2(m)), and Univ. of Texas Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 343, 133 S. Ct. 2517, 2522–23 (2013) (stating that an "employee who alleges status-based discrimination under Title VII" need only show "that the motive to discriminate was one of the employer's motives"), with Quigg v. Thomas Cty. School Dist., 814 F.3d 1227, 1235 (11th Cir. 2016) (stating in a Title VII case that "single-motive claims — which are also known as 'pretext' claims — require a showing that bias was the true reason for the adverse action"). But that

Patterson's retaliation claim fails for the same reason.  Assuming that he could establish a prima facie case, Walgreens provided legitimate reasons for firing him, and Patterson failed to raise a genuine issue of material fact that those reasons were pretextual.  Shannon v. Bellsouth Telecomms., Inc., 292 F.3d 712, 715 (11th Cir. 2002); see Nassar, 570 U.S. at 362, 133 S. Ct. at 2534.  The evidence shows that Walgreens occasionally had to schedule emergency training sessions based on urgent business needs.  It shows that Walgreens fired Patterson because he insisted on an accommodation that would have forced Walgreens to schedule all of its training sessions (including emergency training sessions) around his schedule, and because he did not use or would not consider the accommodations Walgreens offered.  The evidence does not even suggest that Walgreens acted with a retaliatory animus in firing Patterson.  Patterson cannot turn down Walgreens' reasonable accommodations and then claim retaliation when it fires him for his unwillingness to use those accommodations.  Summary judgment for Walgreens was appropriate on his retaliation claim.

For those reasons, we conclude that the district court did not err in granting summary judgment to Walgreens and denying it to Patterson on his discrimination and retaliation claims.

---

confusion does not matter in this case because Patterson has not presented enough evidence to satisfy either causation standard.

## III. CONCLUSION

The judgment of the district court is **AFFIRMED.**

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

March 09, 2018

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 16-16923-GG
Case Style: Darrell Patterson v. Walgreen Co.
District Court Docket No: 6:14-cv-02108-GKS-GJK

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against appellant.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Joe Caruso, GG at (404) 335-6177.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs